UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| John Doe, a minor, by and through his parents James and Jane Doe,<br><br>Plaintiffs,<br><br>v.<br><br>Attleboro Public Schools and the Massachusetts Department of Elementary and Secondary Education Bureau of Special Education Appeals,<br><br>Defendants. | Civil Action No. 09-12127-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                          August 31, 2011

## I. Introduction

Plaintiffs, John Doe and his parents, James and Jane Doe, seek judicial review of a decision of Defendant Massachusetts Bureau of Special Education Appeals ("BSEA"), dismissing in part the Does' request for an administrative hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1401 *et seq*., and Mass. G. L. c. 30A and 71B, regarding a dispute with Defendant Attleboro Public Schools ("APS") over the cost of transporting John Doe to and from school during his first grade school year, 2007 to 2008. The Does also seek an award of attorney's fees and costs related to both this action and the administrative proceedings before the BSEA. The Does and APS have submitted cross-motions for summary judgment. For the reasons discussed below, the motions for summary judgment are each GRANTED in part and DENIED in part, the Does' request for fees and costs is DISMISSED, and the matter is REMANDED to the BSEA for further consideration.

**II. Background**

    **A.    The Statutory Scheme**

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). As a condition for receiving federal funding under the IDEA, states must comply with all of its requirements, including the provision of FAPE to all children with disabilities. 20 U.S.C. § 1412(a). Massachusetts implements and supplements the federal requirements found in the IDEA through state law and regulation. See Mass. G.L. c. 71B; 603 Mass. Code Regs. § 28.

To ensure that FAPE is available to each individual child, the IDEA requires a state or local educational agency to conduct an initial evaluation and develop an Individualized Education Program ("IEP") prior to the provision of special education services. 20 U.S.C. §§ 1414(a), (d); see Lessard v. Wilton Lyndeborough Coop. Sch. Dist., 518 F.3d 18, 23 (1st Cir. 2008) (noting that "[t]he primary vehicle for delivery of a FAPE is the child's IEP"). The IEP is a written plan that sets out the child's current academic achievement and functional performance, measurable annual goals, a description of how progress is to be measured, the services and individual accommodations to be provided by the school, and the extent of the child's participation in classes with children without disabilities. 20 U.S.C. § 1414(d)(1)(A)(I). The IEP is developed by an "IEP Team," which includes the parents, a regular and special education teacher, a representative of the educational agency, an individual who can interpret evaluation results, and other individuals who have "knowledge or special expertise regarding the child." 20 U.S.C. § 1414(d)(1)(B). In Massachusetts, if pursuant to an IEP, "the student is placed by the school district in a program located at a school other than the school the student would have attended if not eligible for special education," the school district is

2

responsible for providing the student with transportation to the program. 603 Mass. Code Regs. § 28.05(5)(a)(1).

A student or parent may challenge the adequacy of an IEP by submitting a complaint and requesting a hearing before a state or local educational agency. 20 U.S.C. §§ 1415(b)(6), 1415(f). In Massachusetts, the relevant agency is the BSEA. See 20 U.S.C. § 1415; 34 C.F.R. §§ 300.507–300.508; Mass. G.L. c. 71B, § 2A; 603 Mass. Code Regs. § 28.08. Decisions of BSEA hearing officers are final and reviewable in state or federal court. 20 U.S.C. §§ 1415(i)(1)(A), 1415(i)(2)(A); 34 C.F.R. § 300.516; see Dracut Sch. Comm. v. Bureau of Special Educ. Appeals of the Mass. Dep't of Elementary and Secondary Educ., 737 F.Supp.2d 35, 41-42 (D. Mass. 2010) (discussing statutory scheme).

The IDEA also provides that the parents of the child with a disability who is the prevailing party in an administrative proceeding, such as those heard by the BSEA, or a lawsuit brought under the IDEA, may recover reasonable attorney's fees subject to court discretion. 20 U.S.C. §§ 1415(i)(3)(B)-(G); Smith v. Fitchburg Pub. Sch., 401 F.3d 16, 22 (1st Cir. 2005).

### B. The Administrative Record[1]

The Administrative Record in this case covers the entirety of a long-running dispute between the Does and APS. D. 20. The matter before the Court is limited to one portion of that dispute - a BSEA Hearing Officer's decision dismissing without a hearing the part of the Does' hearing request concerning APS' failure to pay the transportation costs for John Doe's 2007-08 school year - and does not include the subsequent BSEA proceedings regarding the remainder of the Does' hearing request. The following recitation of facts from the Administrative Record is relevant to the Hearing Officer's decision at issue.

---

[1] Citations to the Administrative Record shall be to "AR __."

### 1. The Does' Hearing Request

On May 3, 2009, the Does, proceeding *pro se*, sent a letter to the BSEA requesting a hearing "to resolve our concerns regarding the Individualized Education Plan [IEP] the Attleboro School [D]istrict has proposed for our son." AR 3. The hearing request alleged that John Doe was diagnosed with Pervasive Developmental Disorder - Not Otherwise Specified ("PDD-NOS"), also knows as atypical autism, and required special educational services, including instruction in an enclosed classroom environment[2] because of his high level of distractability.

According to the hearing request, the Does and John Doe's IEP Team disagreed as to whether John Doe should attend first and second grade at Willett Elementary (a nearby school where John Doe attended kindergarten, which had enclosed first grade classrooms, and which was preferred by the Does) or Hill Roberts Elementary (John Doe's neighborhood school, which lacked enclosed first grade classrooms, and which was preferred by the IEP Team). The IEP Team assigned John Doe to Hill Roberts. The Does eventually signed a document, known as an Intra-District Request form, acknowledging that John Doe's placement at Willett would be granted "on a space available basis" and that the Does, rather than APS, would be responsible for John Doe's transportation to Willett, AR 4, and John Doe attended first grade in 2007-08 at Willett with transportation provided by the Does. Although the Does refused to sign a similar form for John Doe's second grade year, John Doe attended second grade in 2008-09 at Willett with transportation again provided by the Does.

In the hearing request, the Does alleged that the IEP Team's decision to place John Doe at Hill Roberts rather than Willett was beset by "procedural violations" and that the Does "were

---

[2]According to the Does, "closed" or "enclosed" classrooms are separated from one another by floor-to-ceiling walls, while "open" classrooms do not have walls around them and are separated from one another only by four-foot-high bookcases. AR 4, 10; Pls. Statement of Uncontested Facts, D. 25 at 2 ¶ 9.

coerced into signing the . . . Intra District Request form (that resulted in [John Doe] attending Willett for First Grade) because the school district did not follow procedure when they made the decision/threat to place [John Doe] in Hill Roberts." AR 11. The Does sought relief including reimbursement for providing John Doe's transportation during first and second grade.[3]

### 2. APS' Motion to Dismiss

On May 7, 2009 the Director of the BSEA assigned the Does' hearing request to Hearing Officer Rosa Figueroa ("Hearing Officer"). On May 22, 2009 APS filed its reply to the Does' hearing request. In its reply, APS disputed whether the Does were "coerced," argued that any procedural errors by APS were harmless, and asserted that the Does had failed to state a claim upon which the BSEA could grant relief because the Intra District Request form signed by the Does conceded the Does' responsibility for John Doe's transportation.

The Does acquired legal counsel, who submitted their appearance before the Hearing Officer on June 1, 2009. On August 14, 2009 the Does' legal counsel informed the Hearing Officer that the Does and APS had settled many of their areas of dispute and that the only remaining disputed issue between the Does and APS was reimbursement for John Doe's transportation. On August 21, 2009 the Does' counsel moved to withdraw from the proceedings. On August 24, 2009, the Does confirmed to the Hearing Officer that they were again proceeding *pro se* and that the only remaining issue in dispute was reimbursement for John Doe's transportation.

On September 17, 2009 APS moved to dismiss the Does' hearing request for failure to state a claim upon which the BSEA could grant relief.[4] The Does filed their *pro se* response to APS'

---

[3]The hearing request also included multiple factual allegations and requests for relief that are beyond the scope of the limited dispute before this Court. See AR 3-12 (hearing request).

[4]APS stated in its motion that its proffered basis for dismissal was that the BSEA "does not have jurisdiction over the pending issue in the case as it related to Attleboro's policy on the transportation of students who attend school in the district outside of their 'neighborhood

motion on September 21, 2009.[5]

### 3. Hearing Officer's Decision regarding APS' Motion to Dismiss

On September 29, 2009, the Hearing Officer granted in part and denied in part APS' motion to dismiss, holding that a hearing was necessary to resolve the Does' claims with regard to the 2008-09 school year, but dismissing their claims with regard to the 2007-08 school year without a hearing or any further evidentiary inquiry.

As to the 2007-08 school year, the Hearing Officer stated that:

> The facts clearly show that following the Team meeting on June 12, 2007, Parents disagreed with the Team's recommendation to place student at the Hill Roberts School. In order to obtain placement at Willet [sic] Elementary, their school of choice, Parents completed the Intra-District Placement Form. Attleboro agreed to place Student at Willet Elementary pursuant to this Intra-District Placement which specifically states "I will be responsible for arranging transportation for my child." Nothing in the record suggests that Student's disabilities require that special transportation be arranged for him, and Student attended Willet Elementary not as a result of the Team process but as a result of Parental preference . . . . At minimum Parents had ample notice that transportation would be their responsibility. . . . Parents did not reject placement and did not request a hearing at that time to show that Hill Roberts was inappropriate to meet Student's needs. Instead, Parents chose to complete the Intra-District Placement Form to secure placement for Student at the school of their choice. When they did this, they knew that they would be responsible for transportation. Additionally, since Student's IEP called for regular transportation, Attleboro would only have been responsible to offer transportation under said IEP *if* it also provided transportation to similarly situated students without disabilities. 603 CMR 28.05(5)(a).

---

school.'" AR 140. The substance of the motion makes clear that APS' challenge was merits-based rather than simply jurisdictional; APS argued that the Does' allegations failed to state a claim on the merits for a violation of John Doe's IDEA rights, and that the dispute between the Does and APS was a dispute regarding normal education transportation, not special education, and thus was beyond the jurisdiction of the BSEA, which is limited to special education appeals. AR 142-45. The authorities APS relies on in its motion reinforce this characterization of the motion. See AR 145 (citing to Fed. R. Civ. P. 12(b)(6) (governing motions to dismiss for "failure to state a claim upon which relief can be granted")).

[5]APS filed an addendum to its motion to dismiss on September 30, 2009, but the addendum was received after the Hearing Officer issued her ruling on the motion and was not considered in rendering the ruling. See AR 235 (Hearing Officer's Response to Parent's Request for Clarification).

AR 189-90 (emphasis in original; citations to record omitted). Accordingly, the Hearing Officer held that the dispute between the Does and APS over transportation for the 2007-08 school year was an issue of regular education transportation, not special education transportation and was thus beyond the jurisdiction of the BSEA. Id.

As to the 2008-09 school year, the Hearing Officer held that it was unclear whether the Does accepted or rejected John Doe's IEP, and that without an Intra-District Placement form signed by the Does, whether John Doe's transportation that year was an issue of special education or an issue of regular education - and thus, whether the BSEA did or did not have jurisdiction - was a factual question that could not be resolved without a hearing.[6]

### 4. Proceedings before this Court

On December 21, 2009, the Does filed a *pro se* complaint against APS and the BSEA. D. 1. The Does later filed an amended complaint, seeking judicial review of Hearing Officer Figueroa's dismissal of the portion of the Does' hearing request that dealt with the 2007-08 school year, on January 20, 2010. D. 2. The amended complaint also sought an award of attorney's fees and costs for proceeding before the BSEA and for filing in this Court. Id.

The Does moved for summary judgment on August 27, 2010. D. 23. APS cross-moved for summary judgment on September 17, 2010. D. 33. The BSEA filed an opposition to the Does' motion for summary judgment (with argument in support of APS' cross-motion) on October 18, 2010. D. 36. The Court held a hearing on the cross-motions at which the Does, APS and the BSEA were all present. Docket entry for May 4, 2011.

On May 18, 2011, the Does moved to add to the record a list of itemized costs and attorney's

---

[6]The Hearing Officer did hold a hearing on the dispute between the Does and APS with regard to the 2008-09 school year and subsequently issued a written opinion holding that APS was responsible for providing transportation services to John Doe for the 2008-09 school year and ordering APS to reimburse the Does accordingly. AR 254-64.

7

fees in support of the Does' request for costs and fees. D. 42. Attleboro opposed the motion on June 13, 2011, D. 43, and the Does replied on June 23, 2011. D. 44.

## III. Discussion

### A. Standard of Review for Summary Judgment

A party moving for summary judgment bears the burden of "show[ing] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" where the evidence with respect to the material fact in dispute "is such that a reasonably jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific evidence showing that there is a genuine, triable issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court views the record in the light most favorable to the non-moving party, and draws all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If after viewing the record in this light the Court determines that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate. Fed. R. Civ. P. 56 (a).

### B. Standard of Review for Decisions of a BSEA Hearing Officer

In appeals from administrative decisions made pursuant to the IDEA, "[T]he burden rests with the complaining party" - here, the Does - "to prove that the agency's decision was wrong." Roland M. v. Concord Sch. Comm., 910 F.2d 983, 991 (1st Cir. 1990). The IDEA provides that in actions involving such appeals, a federal district court:

(i) shall receive the records of the administrative proceedings;

(ii) shall hear additional evidence at the request of a party; and

8

(iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(C).

The requirement that a reviewing court "base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 206 (1982). Instead, courts must give the administrative proceedings "due weight." Id. "Although the exact quantum of weight is subject to the district judge's exercise of informed discretion, the judge is not at liberty either to turn a blind eye to administrative findings or to discard them without sound reason." Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1087 (1st Cir. 1993) (citations omitted). The level of scrutiny applied to administrative decisions under the IDEA "requires a more critical appraisal of the agency determination than clear-error review entails, but which, nevertheless, falls well short of complete *de novo* review." Id. at 1086. See also Lessard v. Wilton Lyndeborough Coop. Sch. Dist., 518 F.3d 18, 24 (1st Cir. 2008) ("judicial review falls somewhere between the highly deferential clear-error standard and the non-deferential de novo standard").

### C. The Hearing Officer's Dismissal of the Does' Claims regarding the 2007-08 School Year

The Does appeal the Hearing Officer's conclusion that they "failed to state a claim upon which relief may be granted" with regard to the 2007-08 school year, and her decision to grant APS' motion to dismiss with prejudice the Does' BSEA hearing request as to that school year. AR 191.

As the Hearing Officer noted, AR 187, under 801 Mass. Code Regs. 1.01(7)(g)(3) a hearing officer "may at any time, on his own motion or that of a Party, dismiss a case for lack of jurisdiction to decide the matter, for failure of the Petitioner to state a claim upon which relief can be granted."

9

The Hearing Officer noted further that "[m]otions to dismiss [before the BSEA] are analogous to Rule 12(b)(6) of the Federal and Massachusetts Rules of Civil Procedure." AR 188 (citing In re Norfolk Cnty. Agric. Sch., BSEA #06-0390 (BSEA 2006)).[7]

### 1. The Rule 12(b)(6) Standard

The Hearing Officer explained her understanding of the Rule 12(b)(6) standard by citing to Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir. 1998) (affirming dismissal under Rule 12(b)(6) where it was "beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief") and to Calderón-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 63 (1st Cir. 2002) (reviewing dismissal under Rule 12(b)(6) by "accepting as true all well-pleaded factual averments and indulging all reasonable inferences in the plaintiff's favor"). AR 188.

The seminal case setting forth the standard for resolving Rule 12(b)(6) motions is Ashcroft v. Iqbal, - - - U.S. - - - , 129 S.Ct. 1937 (2009), which was issued by the Supreme Court only four months before Hearing Officer Figueroa issued the ruling at issue here. Iqbal and its forerunner, Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), set forth the modern understanding of Rule 12(b)(6)'s "plausibility" standard.

The First Circuit in Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 8–9 (1st Cir. 2011), made clear that dismissal of a complaint or a petition pursuant to Rule 12(b)(6) is inappropriate if

---

[7]"[A] BSEA hearing officer may allow a motion to dismiss if the party requesting the appeal fails to state a claim on which relief can be granted. Since this rule is analogous to Rule 12(b)(6) of the Federal and Massachusetts Rules of Civil Procedure, BSEA hearing officers have generally used the same standards as the courts in deciding motions to dismiss for failure to state a claim. Specifically, a motion to dismiss should be granted only if the party filing the appeal can prove no set of facts in support of his or her claim that would entitle him or her to relief that the BSEA has authority to order. That is, a hearing officer may dismiss a case if he or she cannot grant relief . . . after considering as true all allegations made by the party opposing dismissal and drawing all reasonable inferences in his/her favor." In re Norfolk Cnty. Agric. Sch., BSEA #06-0390, at 7-8.

the petitioner satisfies the two-pronged requirement in Fed. R. Civ. P. 8(a) (2) of "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 8 (citing Fed. R. Civ. P. 8(a)(2)). As to the first prong, a "short and plain" statement "needs only enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. at 12 (quoting Twombly, 550 U.S. at 555). However, in order to satisfy the second prong of showing an entitlement to relief, "a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" Id. (quoting Twombly, 550 U.S. at 555). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Iqbal, 129 S.Ct. at 1949). "In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Id.

"Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Id. (citations and quotations omitted). "Nor may a court attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if a recovery is very remote and unlikely.'" Id. at 12-13 (quoting Twombly, 550 U.S. at 556).

    **2.  The Hearing Officer's Application of the Rule 12(b)(6) Standard**

It appears that in resolving APS' motion to dismiss, the Hearing Officer failed to take the Does' *pro se* but nonetheless well-pled factual allegations as true. The Hearing Officer stated that the Does' claims that they were "'coerced' into filing a request for intra-district placement" and were "'forced' to absorb the cost of transportation" were "not persuasive and unsupported by the

evidence." AR 189-90. Specifically, the Hearing Officer stated that "Attleboro offered Student placement at Hill Roberts Elementary" and that "Parent did not reject placement . . . ." AR 190. But in their request for a hearing filed with the Hearing Officer, the Does clearly alleged that they repeatedly attempted to reject John Doe's placement at Hill Roberts.[8] Similarly, the Hearing Officer held that when John Doe was assigned a placement at Hill Roberts after the June 12, 2007 Team meeting, the Does "did not request a hearing at that time to show that Hill Roberts was inappropriate to meet Student's needs. Instead, Parents chose to complete the Intra-District Placement Form to secure placement for Student at the school of their choice." AR 190. But in their request for a hearing filed with the Hearing Officer, the Does clearly alleged that APS failed to provide them with notice of their procedural safeguards (including their right to appeal),[9] and that the Does were

---

[8] See AR 4 (the first time the Does were told that John Doe could only remain at Willett if the Does signed an Intra-District Request form was when Willett Principal Ms. Heppe called Jane Doe in May 2007; Jane Doe refused and replied "that [John Doe] was at Willett because he required closed classrooms"); AR 5 (when Heppe stated in May 2007 that the Does needed to sign an Intra-District Request form, Jane Doe refused and "asked why this decision was being made in May when [John Doe] has an IEP that went until October and his placement in his IEP was Willett"); id. (at the June 12, 2007 Team meeting, Jane Doe reiterated that John Doe was placed at Willett because he "requires a closed classroom due to increased distractability secondary to a diagnosis of PDD"); AR 6 (at the June 12, 2007 Team meeting, Jane Doe told the Team that she was "concerned that [John Doe] would experience [distraction and overstimulation] difficulties in an open classroom"); id. (at the June 12, 2007 Team meeting, Jane Doe told the Team that by placing John Doe at Hill Roberts they were "ignoring [the Does'] concerns, the recommendation of [John Doe]'s preschool teacher and the recommendation of his doctor"); AR 7 (at the June 12, 2007 meeting, the Does "expressed during the meeting that they strongly disagreed withe the team's determination that Hill Roberts was an appropriate placement"); id. (on the Intra-District Request form submitted by Jane Doe, Jane Doe "reiterated her belief that [John Doe] would not be able to make academic progress in that environment (Hill Roberts) and that she strongly disagreed with the decision made at the team meeting on 6/12/2007").

[9] See AR 7 ("[John Doe]'s parents were not given a notice of procedural safeguards at the team meeting even though they expressed during the meeting that they strongly disagreed withe the team's determination that Hill Roberts was an appropriate placement for [John Doe]. There was no Team Determination of Educational Placement sent or given to [John Doe]'s parents and no School District Proposal to Act sent or given to [John Doe]'s parents that informed them of

12

repeatedly told that signing an Intra-District Request form was the only way John Doe could remain at Willett.[10]

Additionally, the Does' hearing request alleges that Maureen Morgan, the head teacher at John Doe's pre-school, provided written input to the June 12, 2007 Team meeting, that her written input stated incorrectly that John Doe's kindergarten educational placement (in which he was assigned to a school with enclosed classrooms rather than his local school) was not related to his need to be in a enclosed classroom, and that the Does were not notified of the existence or content of the written input until they arrived at the June 12, 2007 Team meeting. See AR 5. This allegation, if true, would violate the statutory requirements governing Team meetings, see 20 U.S.C.

---

the team's decision to change [John Doe]'s placement to Hill Roberts"); id. ("A copy of [the June 12, 2007] meeting notes was sent home with [John Doe] that described the meeting . . . . No amendment to the IEP was presented that indicated that Hill Roberts was [John Doe]'s new placement. [John Doe]'s parents were not given a notice of procedural safeguards with the meeting notes").

[10]See AR 4 ("Ms. Heppe[] called [John Doe]'s mother to say that if [Jane Doe] wanted [John Doe] to return to Willett for the following year, she would need to complete and Intra District Request form"); AR 4-5 ("Mrs. Heppe informed [Jane Doe] that if [Jane Doe] wanted [John Doe] to attend Willett (which has closed classrooms), she would need to sign an intra district request form and the request would be considered on a space available basis. Ms. Heppe then stated that [Jane Doe] would have to follow this process each year"); AR 6 (at the June 12, 2007 Team meeting, APS Special Education Coordinator Ms. Dickens Weil stated that Hill Roberts "is [John Doe]'s assigned school and that is where he will be sent for First Grade unless [the Does] make a request for an Intra District Placement'"); AR 7 (the Does "were simply told that [John Doe] would not be allowed to return to Willett for First Grade unless they completed and signed an Intra District request form indicating that [John Doe]'s placement at Willett would be considered on a space available basis and his parents would be responsible for transporting him"); id. ("A copy of [the June 12, 2007] meeting notes was sent home with [John Doe] that described the meeting and indicated that if [John Doe]'s parents wanted him to attend Willett, they would need to make a request to the School Superintendent via an intra district request form"); AR 11 ("the school district did not follow procedure because they knew that a placement at Hill Roberts would be inappropriate for [John Doe] and wanted to ensure that we would not appeal by not using the proper documents and not informing us of procedural safeguards").

13

§ 1414(d)(1)(C)(ii)(II),[11] and would, at a minimum, bear on the plausibility of the Does' allegation that they were "coerced" into signing an Intra District Request and were not provided with the full opportunity to which they were statutorily entitled to challenge or appeal the Team's decision that John Doe could be successful at Hill Roberts. AR 5-6, 11. The Hearing Officer's decision omits any discussion of the Morgan incident. See AR 185-91.[12]

As the Hearing Officer correctly noted, when ruling on a motion to dismiss, an adjudicator must "accept[] as true all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." AR 188 (quoting Calderón-Ortiz, 300 F.3d at 63). In such a posture a Hearing Officer "may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Ocasio–Hernández, 640 F.3d at 12 (quoting Twombly, 550 U.S. at 556). Here, the Hearing Officer failed to credit the Does' factual allegations when reviewing APS' motion to dismiss the Does' hearing request, and thus misapplied the relevant legal standard.

**D. Remedy**

---

[11]"A member of the IEP Team may be excused from attending an IEP meeting, in whole or in part, when the meeting involves a modification to or discussion of the member's area of the curriculum or related services, if . . . the member submits, in writing to the parent and the IEP Team, input into the development of the IEP prior to the meeting." 20 U.S.C. § 1414(d)(1)(C)(ii)(II) (emphasis added).

[12]APS argues that its failure to provide the Does with a copy of the June 5, 2007 Morgan letter prior to the Team meeting did not violate 20 U.S.C. § 1414(d)(1)(C)(ii)(II) "because the topic of the June 2007 Team meeting was the 2007-2008 school year, and Ms. Morgan's memo related to the placement decision for the 2006-2007 school year . . . [and] had no influence on the IEP/placement for the 2007-2008 school year." Def. (APS) Memo at 5-6. However, the statement that the Morgan memo "had no influence" on the Team's placement of John Doe for 2007-08 is a factual assertion that is directly contrary to the Does' factual assertion that the meeting turned at least in part on the Morgan letter, AR 5-6, and the Hearing Officer was obligated to take the Does' well-pled factual assertions as true. Ocasio-Hernandez, 640 F.3d at 12; Calderon-Ortiz, 300 F.3d at 63.

The BSEA has primary jurisdiction over claims and disputes relating to the provision of special education services in Massachusetts, see 20 U.S.C. § 1415(f)(3)(E); Mass. G.L. c. 71B, § 3; 603 Code Mass. Reg. §§ 28.08(3), (5)(c), and has "broad" authority "encompassing 'complaints with respect to any matter relating to the identification, evaluation, or educational placement of [a] child, or the provision of a free appropriate public education to such child.'" Rose v. Yeaw, 214 F.3d 206, 210 (1st Cir. 2000) (quoting 20 U.S.C. § 1415(b)(6)(A)). Administrative remedies available under the BSEA must be exhausted before a federal court can resolve a dispute under the IDEA. See City of Boston v. Bureau of Special Educ. Appeals, 2008 WL 2066989, at *2-3 (D. Mass. Apr. 30, 2008) (discussing exhaustion requirement). "This doctrine enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy." Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir. 1989). "'[F]or issues to be preserved for judicial review they must first be presented to the administrative hearing officer," id. (quoting David D. v. Dartmouth Sch. Comm., 775 F.2d 411, 424 (1st Cir. 1985)), and once the hearing officer has resolved the dispute, "the 'culmination of the state administrative appeals process is . . . to take the matter to either state or federal court.'" Id. (quoting David D., 775 F.2d at 422) (emphasis and ellipses added by the Christopher W. court).

Against this backdrop, the BSEA argues that if the Court disagrees with the Hearing Officer's application of legal standards during her resolution of APS' motion to dismiss, the Court should not rule on the Does' claim regarding reimbursement for the 2007-08 school year nor on the merits of APS' motion to dismiss but instead "must remand the matter to the BSEA for a clarification of its reasoning for declining to reach . . . a decision on the merits of [the Does']

15

claims." Def. BSEA's Memo at 10. The Does, on the other hand, seek a "declaratory judgment that the [BSEA] failed to grant the plaintiffs the full relief to which they were entitled." Am. Compl. ¶ 1-2.

The Court agrees with the BSEA's proposal, and notes that other courts in this district have followed precisely that approach. See Dracut Sch. Comm., 737 F. Supp. 2d at 55 (remanding a dispute to a Hearing Officer for redetermination when the Hearing Officer's initial determination "did not seem to follow the correct federal standard"). Accordingly, this matter will be remanded to the BSEA for a redetermination of APS' motion to dismiss the Does' request for a hearing regarding reimbursement for the 2007-08 school year. In resolving the motion to dismiss, the BSEA shall accept as true the Does' well-pleaded factual averments and indulge all reasonable inferences in the Does' favor. Calderón-Ortiz, 300 F.3d at 63.

The Court stresses that this remand is limited in scope[13] and does not intrude on the BSEA's primary jurisdiction. The Court takes no position as to whether the Does' allegations, taken as true, entitle them to a BSEA hearing or the ultimate relief the Does seek; that question should be resolved in the first instance by the Hearing Officer applying the correct legal standard and not by the Court. Christopher W., 877 F.2d at 1094.

### E. Costs and Fees

The Does have moved for costs and fees pursuant to 20 U.S.C. § 1415(i)(3)(B)-(G). D. 2-2 at 38, D. 23, D. 24 at 19-20, D. 42, D. 44. Both because this matter is being remanded to the BSEA, and thus the extent to which the Does are a "prevailing party," 20 U.S.C. § 1415(i)(3)(B)(i)(I), is not yet clear, the Does request for costs and fees is dismissed as unripe without prejudice to renew at

---

[13]This remand does not disturb any of the Hearing Officer's distinct findings with regard to the 2008-09 school year. AR 255-68.

the conclusion of BSEA proceedings.

### F. Other Claims Brought by the Does

The Does' *pro se* complaint can be read to state a handful of claims distinct from the Does' request for costs and fees and their appeal of the Hearing Officer's dismissal of the Hearing Officer's dismissal of their hearing request with regard to the 2007-08 school year.

To the extent the Does seek a determination from this Court that APS committed procedural violations when deciding where to place John Doe for the 2007-08 school year, the Court leaves it to the BSEA to decide in the first instance 1) whether to reach a determination of these issues and 2) how the issues should be resolved if the BSEA does reach such a determination. See Section III.D above. Similarly, to the extent the Does claim that the Hearing Officer committed procedural and BSEA rule violations and errors of law when scheduling and resolving APS' motion to dismiss, these claims are mooted by the Court's remand. See Section III.D above.

Inasmuch as the Does' complaint can be construed to state a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, that claim both 1) was not part of the Does' briefing to the Hearing Officer regarding APS' motion to dismiss and is beyond the scope of this appeal, see City of Boston, 2008 WL 2066989, at *3 (plaintiffs must exhaust BSEA administrative remedies "even when [they] do not rely on the IDEA as the source of their claims, if their claim is sufficiently related to the provision of a FAPE") (citations omitted), and is mooted by the Court's remand. See Section III.D above.

To the extent the Does seek to challenge any aspect of the Hearing Officer's decision with regard to the Does' request for reimbursement for the 2008-09 school year because the Does prevailed in that request, see AR 255-64 (Hearing Officer decision holding that APS "was

17

responsible to provide transportation services to "John Doe" during the 2008-2009 school year" and that APS "shall reimburse Parents"), the Does are not "aggrieved by the findings" within the meaning of 20 U.S.C. § 1415(i) and thus this Court lacks jurisdiction to hear the Does' challenge. See Grace B. v. Lexington Sch. Comm., 762 F.Supp. 416, 418 (D. Mass. 1991) ("As [student] and her mother prevailed before the Hearing Officer, they are not aggrieved parties under the [IDEA]" and thus lack "access to either the state or federal courts").

## IV. Conclusion

For the reasons discussed above, the parties' cross-motions for summary judgment are each GRANTED in part and DENIED in part. The Does' request for fees and costs is DISMISSED as moot. The matter is REMANDED to the BSEA for further consideration.

**So ordered.**

/s/ Denise J. Casper
United States District Judge